WILLIAM GARDNER, Appellee, v. WALTER J. KIBURZ et al., Appellants.

**VENDOR AND PURCHASER:** Performance of Contract—Effect of Deficiency in Acreage. A vendee in a contract of *sale* of land, 1, 5 nothing appearing to the contrary, may, under either of the following conditions, recover a pro rata part of the consideration paid, as recoupment for a substantial and subsequently discovered shortage in acreage:

(a) When he has *contracted* for a definite number of acres for a definite lump sum; or

(b) When he has received a *deed* which expressly or impliedly represents or warrants, even in good faith by the vendor, that the vendor is selling a definite number of acres, "*more or less*," for a definite lump sum.

**VENDOR AND PURCHASER:** Performance of Contract—Evidence on Issue of Deficient Acreage. An original contract of purchase 2 which is in no manner contradictory of a subsequently executed deed may be admissible on the issue whether the land was sold (a) for a lump sum, or (b) at a given price per acre.

**PLEADING:** Petition—Multifarious Theories in One Count. A pleading, so framed in a single count as to authorize recovery 3 on more than one theory, will, in the absence of attack, justify recovery on any of the theories which may be supported by the evidence. So held where, in an action to recover for a deficiency in land bought, the petition would warrant a recovery, either on the theory: (a) That the original contract of purchase had been breached; or (b) that the representation or warranty in the subsequently executed deed had been breached; or (c) that plaintiff was suing for an overpayment.

VENDOR AND PURCHASER: Performance of Contract—Effect of
"More or Less" in Deed Description. The dragnet expression
of "*more or less*," following a designated acreage, does not cover
a *material* shortage.

VENDOR AND PURCHASER: Performance of Contract—Effect of
1, 5 Deficiency in Acreage.

VENDOR AND PURCHASER: Requisites of Contract—"Sale" and
6. "Exchange" Contrasted. A contract which fixes a definite price
on the land received from the vendor, and an equally definite
price on the things which vendee is to deliver in payment, con-
stitutes a "*sale*," and not an "exchange," especially when the
contrary is not evidenced by anything in the contract, or by evi-
dence extrinsic thereto.

VENDOR AND PURCHASER: Performance of Contract—Deficiency
7 in Acreage Controlled by Contract Values. In an action to re-
cover for a deficiency in acreage, the parties are conclusively
bound by the values which the parties have deliberately at-
tached to the entity which is the subject of the sale, even
though the said entity embraced two tracts employed as one
farm, and the deficiency occurred in the less valuable tract, and
an excess occurred in the more valuable tract.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SEPTEMBER 21, 1918.

REHEARING DENIED DECEMBER 14, 1918.

AN action at law to recover damages on account of a
deficiency in the acreage of land sold and conveyed by de-
fendants to plaintiff. There was a judgment for plaintiff,
and defendants appeal.—*Affirmed.*

*W. H. L. Watts,* and *Trewin, Simmons & Trewin,* for
appellants.

*J. C. France* and *C. J. Lynch,* for appellee.

WEAVER, J.—The defendants were the owners of a farm
in Clayton County, Iowa, and, in June, 1914, entered into a
written contract, by which they undertook to convey it to

plaintiff, designating it as "being 500 acres
of land, now owned by Kiburz Bros., and be-
ing the same farm shown to said second
party at a previous time." The recited con-
sideration for such sale is stated to be $50,-
000, to be paid, $1,000 down, upon the signing of the con-
tract; $4,000, September 1, 1914; $14,624, March 1, 1915;
and the remaining sum of $31,000, by the conveyance to the
defendants of a certain described tract of land in Texas.
Under date of ——— day of July, 1914, the defendants con-
veyed to plaintiff the Clayton County land by warranty
deed. The property is described therein as being made up
of several designated parcels in Section 18, Township 95,
Range 3, "containing 215 acres, more or less, according to
government survey," and also, other designated parcels in
Sections 8 and 17, "containing 284.07 acres, more or less."
All the lands described and conveyed constitute together
a single farm. The consideration expressed in the deed is
"one dollar and other good and valuable considerations."

1. VENDOR AND
PURCHASER:
performance of
contract: effect
of deficiency
in acreage.

By his petition in this action, the plaintiff alleges that
the land was sold to him as containing 500 acres, at the
price of $100 per acre, or $50,000, but that, upon subse-
quent measurement and ascertainment, it was found to con-
tain but 479.89 acres, and no more; and because of the
shortage of 20.11 acres, thus developed, he demands recovery
in damages at the rate of $100 per acre, with interest. The
answer consists principally of denials of the material al-
legations of the petition.

The evidence offered on the trial is very brief. In sup-
port of his claim, the plaintiff identified and introduced the
written contract between the parties, also the conveyance
made in pursuance of such agreement, and called as a wit-
ness a surveyor, who testified that the portion of land de-
scribed in the deed as being in Section 18, and containing
215 acres, more or less, contains, in fact, but 173.51 acres;

and that the remaining portion of the land described as being in Sections 8 and 17, and containing 284.07 acres, contained, in fact, 306.08, making the total actual area 479.59 acres, and a net shortage of 20.41 acres. Defendants, on their part, offered and introduced evidence tending to show that the true area of the land in Section 18 was 201.65 acres, and of the land in Sections 8 and 17 was 289.24 acres, making the total area 490.89 acres, and a net shortage of 9.11 acres. Defendants further sought to show that the land in Sections 8 and 17, which overran in measurement, was of better quality and of more value per acre than the land in Section 18; but this evidence was excluded by the court upon plaintiff's objection to its competency and materiality. Further offer was made to show the market value of the Texas land conveyed to the defendants; but this also was excluded, as was other testimony, to which we shall later refer.

The jury submitted a special finding that the land conveyed to plaintiff was "short of the 500 acres designated in the contract" to the extent of 15 acres, and assessed damages in plaintiff's favor for $1,635.75. Judgment was entered accordingly.

I. The defendants, in their argument, give first attention to the proposition that the court erred in permitting the plaintiff to introduce in evidence the written contract of sale which preceded the execution and delivery of the deed. The objection raised to the offer of this instrument on the trial below was that it is "incompetent, irrelevant, and immaterial," and that the deed subsequently made "superseded the contract, and is the only competent evidence of the agreement between the parties." In support of this position, we are cited to numerous precedents: *Davenport v. Whisler*, 46 Iowa 287; *Close v. Burlington, C. R. & N. R. Co.*, 64 Iowa 149; *Ma-*

2. VENDOR AND
PURCHASER:
performance
of contract:
evidence on issue of deficient
acreage.

*thias v. Mathias,* 167 Iowa 81; *Carey v. Walker,* 172 Iowa 236; and others of the same general class. Of the soundness of the rule as applied in the cited cases, no question can here be raised; but we think it is not available to the defendants, under the record before us. It may be conceded that, in the absence of fraud or mistake, the preceding contract will not be admitted in evidence, to vary or impeach or deny the terms of the subsequent deed. But such was neither the purpose nor the effect of the evidence in this case. While the petition does not very definitely indicate the thought of the pleader, whether his action was founded upon a breach of the original contract or upon breach of the warranty or representation in the deed, or for recovery as for an overpayment, he pleads and sets out both instruments, and the alleged fact that there is a material shortage in the acreage conveyed to him. It follows, of necessity, under our rules of pleading, that, if the facts stated disclose a right of action on either theory, plaintiff is entitled to the benefit of all evidence having any fair tendency to prove the truth of his allegations. The contract is not open to the objection that it serves in any manner to impeach or alter the terms of the deed. If the deed does not contain any express statement that the land was sold and conveyed at an agreed price per acre, neither does it contain any express statement that the sale was made in gross. There is no presumption either way, although there is authority for the proposition that, if it appear that the price is named in a lump sum, and there is nothing more to indicate whether the sale was made in gross or by the acre, the former may be or will be inferred. Some confusion has arisen by reason of the failure of the courts in some instances to distinguish between a sale in gross, or lump, and a sale of a definitely stated number of acres for a gross or lump sum. In a sale of the former kind, generally speak-

3. PLEADING: petition: multifarious theories in one count.

ing, the seller sells and the purchaser buys, each at his own risk as to the acreage of the property transferred. In the other case, the seller undertakes to sell, and the purchaser understands that he is buying, a definitely stated number of acres, for the gross price named; and, although no price per acre be expressly mentioned, the right of the latter to recover for a material shortage in the acreage cannot be doubted. It is a matter of common observation that, while farm lands are usually bought or sold at a stated price per acre, or for a gross price computed on that basis, the deeds by which the conveyances are made rarely, if ever, disclose in terms anything in regard to the price, except in the aggregate. To adopt the appellant's contention that no recovery for shortage in the amount of land conveyed can be had, except in cases where the conveyance shows upon its face that the sale has been made at a specified price per acre, would be tantamount to establishing a rule or precedent that, no matter how great the deficiency in the amount of the land conveyed, the buyer is wholly without remedy, unless he charges and is able to prove fraud in the seller, or a mutual mistake of both. That the original contract may be shown for its bearing upon the question whether the sale of the land was for a gross or lump sum, or at a given price per acre, is a well-established doctrine. *Acord v. Mitchell*, 167 Iowa 652; *Fisher v. Trumbauer & Smith*, 160 Iowa 255; *Cardinal v. Hadley*, 158 Mass. 352; *Triplett v. Allen*, 26 Gratt. (Va.) 721; 2 Warvelle on Vendors (Second Ed.) Section 920. The identical question was before us in the *Acord* case, supra; and we held that an objection such as was raised below by appellants was not well taken, and that the contract could properly be considered upon the question whether the sale was made by the acre or in gross. Counsel for appellant say that, if such was the holding, it is wrong, and should be overruled. The precedent thus questioned is not in any way inconsis-

tent with the rule that a deed merges the contract of which it is the consummation, and there is no sound reason why we should overrule it. Taking the deed itself and the contract of sale together, they clearly show that the land was purchased by plaintiff at $100 per acre, or, what is the same, that the sale was of the stated quantity of land for $50,000. The farm is expressly described in the contract as being "500 acres of land," and the deed undertakes to convey and warrant to the plaintiff 499.07 acres.

In *Triplett v. Allen,* supra, the original contract described the land sold in two parcels, stating the number of acres in each, for $10,000. Later, a deed was made and delivered, conveying and warranting the land, describing it, as containing the stipulated number of acres, but adding thereto the words, "more or less." It will be seen that, in this respect, the case is strikingly similar to the one now at bar. The court there holds that, "under the contract of the parties and the evidence taken in the cause, the sale was a sale per acre, and not a sale in gross, and that the appellee (seller) is bound to make good the deficiency." In *Couse v. Boyles,* 4 N. J. Eq. 212, the parties entered into a written contract for the sale of a certain farm, the description of which was followed by the words, "said to contain 135 acres, be the same more or less." The consideration for the sale was fixed at $3,500. The deed subsequently made describes the premises as containing (after excepting therefrom a certain graveyard) "135 acres, be the same more or less." It was later found that the land fell substantially short of the stated measurement. In an action by the seller to foreclose his mortgage for a part of the purchase price, the purchaser pleaded the shortage as ground for a proportionate abatement of the plaintiff's claim. In sustaining this defense, the court says:

4. VENDOR AND PURCHASER: performance of contract: effect of "more or less" in deed description.

"It is quite evident that it was in the contemplation of the parties at the time that the quantity of land sold was 135 acres; both the contract and deed call for that number of acres, and it is reasonable to suppose that, before the survey of Mr. Rhodes, they thought that very near, if not exactly, the amount of the land.  *  *  *  The plain and sensible rule, as it appears to me, is this: when land is sold as containing so many acres 'more or less,' if the quantity on actual survey and estimation either overrunning or falling short of the contents named be small, no compensation should be recovered by either party. The words 'more or less' must be intended to meet such result. But if the variance be considerable, the party sustaining the loss should be allowed for it."

In the course of its discussion, the court further cites approvingly the case of *Hill v. Buckley,* 17 Vesey 393, 401, which announces the same doctrine, and holds that the rule is applicable although the land is not bought or sold professedly by the acre, "the presumption being that, in fixing the price, regard was had to the quantity." With further reference to the cases, the chancellor adds:

"Nor do I think it a sufficient objection  *  *  *  that the contract has been executed. It is true, the cases cited refer to contracts remaining *in fieri;* but the principle is the same, whether the contract only be executed, or has been consummated by giving the deed." .

In *Wilson v. Randall,* 67 N. Y. 338, 341, it is expressly held that, in a controversy of this kind, resort may be had to both contract and deed, upon the question whether the sale was in gross or by the acre. Indeed, the rule deducible from the great weight of authority is that the question whether the sale is in gross or otherwise does not depend solely upon the presence or absence of an expressly stated price per acre, in the written contract or subsequent deed; but, if the terms of these instruments be such as to make it

plain that the land is bought and sold upon the mutual understanding and agreement that it contains a definitely stated number of acres, then the obligation to make good any material deficiency exists, and the purchaser may recover for any loss thus sustained by him. The contract in this case clearly indicates that the sale was of a farm containing 500 acres; and defendants, in evident recognition of that undertaking, made and delivered their deed, purporting to convey and warrant that number of acres (less only a negligible fraction of an acre) ; and we think it should not be said that a deficiency of 15 acres, representing $1,500 of the purchase price, is of such small and inconsiderable character as to be negligible, or to be disregarded as an allowable discrepancy, under the words "more or less," employed in the deed.

II.    Thus far, we have treated the case as one involving a sale by the acre; but we think the plaintiff's case was sustainable, even though no price per acre was named or proved.

5. VENDOR AND PURCHASER: performance of contract: effect of deficiency in acreage.

The deed made by the defendants, as we have already said, conveys and warrants a farm of 500 acres; or, to be exact, 499.07 acres, more or less. This warranty was not merely of the defendants' title, or their right to convey, but, subject only to slight and unimportant inaccuracies, it constitutes at least a representation, if not a warranty, on which the buyer may rely, as a near approximation to the actual quantity of land. In other words, while not a warranty of "the precise quantity of land, it does import that the actual quantity is a near approximate to that mentioned" (*Kitzman v. Carl*, 133 Iowa 340, 341) ; and if there be more than a reasonable deficiency, there is a breach of such covenant. *Hosleton v. Dickinson*, 51 Iowa 244; *Boddy v. Henry*, 126 Iowa 44; *Baltimore P. B. & L. Soc. v. Smith*, 54 Md. 187; *Fisher v. Trumbauer*, 160 Iowa 255; *Crislip v. Cain*, 19 W. Va. 438; *Oakes v. DeLancey*, 133 N. Y. 227; *Couse v. Boyles*, 4 N. J. Eq. 212.

Speaking of the words "more or less," in contracts and deeds of conveyance, Mr. Warvelle says they "can only be considered as covering inconsiderable or small differences, one way or the other, and do not, in themselves, determine the character of the sale. Such words do not necessarily import that the purchaser takes the risk of quantity, nor can they be regarded as stipulations intended to cover any after-discovered errors.   *   *   *   The words 'more or less' are intended to cover a reasonable excess or deficit." 2 Warvelle on Vendors (2d Ed.) Section 832.

The case of *Paine v. Upton*, 87 N. Y. 327, is quite in point with the one before us, in several particulars. The land sold was a farm, made up of parcels separately described, and their contents specifically named. The agreed price was a lump sum, and a deed was made, describing the land as "220 acres of land, be the same more or less." There proved to be a material deficiency. In holding that the purchaser was entitled to relief, the court says:

"In the absence of any finding of special facts and circumstances, the natural presumption is that, in a sale of agricultural land, the element of quantity enters into the transaction, and affects the consideration agreed to be paid." Of the effect of the words "more or less," the court further says they "do not import a special engagement that the purchaser takes the risk of the quantity, and that, while their presence may render it more difficult to prove such a mistake as will justify the interference of equity, they are not equivalent to a stipulation that the mistake, when ascertained, shall not be a ground of relief.   *   *   *   They are also intended to cover small discrepancies between the actual quantity and that stated in the contract or deed, and no inference of mistake would arise from a small discrepancy merely. But where the difference is material, and the mistake is confessed, or satisfactorily proved, there would seem to be no violation of principle in granting relief."

The court, in the same case, considers and overrules the objection that the purchaser's acceptance of a deed operates to defeat his right of action on account of the deficiency. The words "small" and "great," or "very great," as applied to deficiencies in quantity of land conveyed, are comparative only, and depend for their significance upon the circumstances of the particular case under consideration. A difference of few or even many acres in a conveyance of land of little value, may be too small to justify the belief that it would have prevented the sale had it been known at the time; while, on the other hand, the difference of a few feet, or even inches, in a valuable city lot, may be a matter of decisive importance. To use the words adopted by a distinguished law writer:

" 'It has long been settled,' says Cook, J., 'that the relative extent of the surplus or deficit cannot furnish *per se* an infallible criterion in each case for its determination, but that each case must be considered with reference not only to that, but its other peculiar circumstances. The conduct of the parties, the value, extent and quality of the land, the date of the contract, the price, and other nameless circumstances, are always important, and generally decisive.' " 2 Warvelle on Vendors (2d Ed.), Section 833.

The attempt of some courts to say what percentage of deficiency is generally allowable, under the words "more or less," does not appeal to us as either a practicable or safe rule. In the case at bar, the parties were dealing with valuable property, on the apparent basis of $100 per acre; and, while it is true that a shortage of 15 acres is but 3 per cent of the number of acres mentioned in the contract, the corresponding proportion of the purchase price is $1,500, a sum which is certainly not to be disregarded as nominal, nor is it either absolutely or relatively so small that we can presume that, if plaintiff had been informed of it, he would not have entered into the contract, and paid the full stated price. It

is not to be denied that the law applicable to cases of this nature had been a somewhat vexed question, and that the precedents are by no means in universal harmony; but we think it a safe and well-supported proposition that the man who purchases land, relying in good faith upon its dimensions, as definitely described in his contract and deed, is entitled to an adequate remedy if it proves to be materially deficient in acreage; and our own cases, while adhering to the salutory rule that a shortage of such unimportant character that we may reasonably presume it would not have prevented his purchase, affords no ground for damages, recognize, nevertheless, the justice and propriety of awarding him damages, where he has sustained a real and substantial loss. If the owner of farm land, worth, as ordinarily it is today, from $100 to $300 per acre, contracts to sell and convey a given tract, represented to contain 100 acres, when in fact it contains but 95 or 97 acres, and gives to his purchaser a deed describing it as 100 acres, there ought not to be, and we think there is not, a rule or principle of law or equity by which the addition of the words "more or less" to the description in his deed will relieve him of liability to make good the shortage, simply because the margin of advantage he has thus gained over his grantee is only 5 per cent or 3 per cent. And this is no less true if it shall appear that the seller's representation or warranty was made in good faith. The representation made is not, in any fair sense, such "near approximation" to the actual quantity of land as will cover a discrepancy of such substantial dimensions. The contract and deed in this case will illustrate the minor differences or variations which may properly be regarded as negligible, and as affording no ground for the recovery of damages. The contract, as will be seen, describes the land as being "500 acres," without the words "more or less" or other saving clause; while the deed describes it as 499.07 acres, more or less. Plaintiff, having accepted the deed, could not

be heard to complain of this variation of a fraction of an acre, and the saving clause "more or less" in the deed relieves the defendant from liability for any minor deficiency not materially affecting the quantity or value of the property. Subject to this reasonable restriction, full justice is done by holding each party to the full performance of his contract, requiring the purchaser to pay the agreed price in full, and the seller to furnish the promised consideration in full.

III. Assuming that plaintiff is held entitled to recover at all, appellants say that the transaction between the parties was a mere exchange of lands, upon which inflated or trading values were placed in the contract, and that the recovery, if any is had, should be based upon the actual value of the property. Upon this point, we are cited to *Fagan v. Hook*, 134 Iowa 381. But we think this case does not fall in line with that precedent, and that the rule there laid down is clearly against the appellants. It does hold, as argued, that, where the parties enter into a mere contract of exchange, and, for the mere purpose of effecting it, estimated or fictitious values are affixed to the properties, such inflated values will not govern, in assessing damages for a violation of the contract.

6. VENDOR AND PURCHASER: requisites of contract: "sale" and "exchange" contrasted.

"In other words, the values designated in the agreement to be binding on the parties must appear to have been specified as such, and not as merely incidental to some other purpose not involving the intention of deciding the true worth."

The opinion then adds that the criterion in determining whether there has been a sale or an exchange is whether there is a fixed price at which the things are to be exchanged. "If there is such fixed price, the transaction is a sale, but if there is not, the transaction is an exchange."

Applying this test, we have no difficulty in holding that the transaction in this case was a sale, and not an exchange.

The contract is, in express terms, one for the sale by the defendants of their farm of 500 acres, for a fixed and definite price of $50,000, which the plaintiff undertook to pay in money, to the amount of nearly $20,000, and the remainder by the conveyance of a certain section of land in Texas. There is nothing upon the face of the contract or deed indicating a mere exchange of property, nor was any evidence introduced or offered to that effect. Neither of the defendants took the witness stand, to give his version of the transaction. One Walston, who appears to have had some agency in bringing the parties together, was examined as a witness for the appellants; and, being asked whether the values of the property, as stated in the contract, "were actual values on their respective properties—were actual values or trading values," plaintiff's objection to the competency of the evidence was sustained. If for no other reason, the ruling was clearly right because the inquiry clearly called for no more than the witness' conclusion, and not for the material facts. The same may be said of other questions to which objections were sustained, asking the witness whether any actual values were fixed on the lands in Iowa and Texas. Other questions were asked, as to whether, in the negotiations, there was any talk between the parties to the effect that they were putting trading values, rather than actual values, upon the property; but we think they all come under the same valid objection.

IV.   It will be noticed, from the statement of the case, that the original contract between the parties makes no attempt to give a detailed description of the property, further than to designate it as being "500 acres of land now owned by Kiburz Brothers, and the same farm shown to the said second party at a previous time;" but in the deed, it is described as being in two parts, one containing 215 acres, and the other, 284.07

7. VENDOR AND PURCHASER: performance of contract: deficiency in acreage controlled by contract values.

acres. Together, as far as the record shows, these two descriptions make up the area of a single farm. It will further be noticed that the evidence shows, and on trial the defendants admit, that there is a shortage in the first described tract (spoken of as the "Giard Claim"), and an excess in the other tract. The net shortage, according to plaintiff's claim, is about 20 acres, but, according to defendant's showing, it is about 9 acres. The jury fixed it at 15 acres. On the trial, the defendant sought to show that the land in the Giard tract was inferior in quality and value to the land included in the other description; but the evidence was excluded, on plaintiff's objection. Error is assigned on this ruling, upon the theory that, as the shortage appears in the less valuable tract, and the excess in the more valuable, the damages, if any, to be awarded to the plaintiff should "not be determined by the average price per acre of the whole farm, but on the basis of the relative value of the particular part" in which the deficiency is found. The authorities cited by the appellant (*Mischke v. Baughn,* 52 Iowa 528, *Smith v. Ward,* 66 W. Va. 190, *Smith v. White,* 71 W. Va. 639, and others of that class) are not in point here. These precedents have reference to the rule which applies where there is a failure of title to some specific part or portion of land which has been conveyed, and the grantee seeks to recover damages from his grantor. In such case, it is ordinarily just that the damages be ascertained by determining the value of the specific property lost. In this case, there is no failure of title alleged or shown. Plaintiff does not complain that defendants failed to convey to him a good title to every acre of land contained within the described tracts which together make up the entire farm, but that the farm which he purchased as containing 500 acres falls materially short thereof in actual measurement. In such case, the rule is well settled that the abatement in selling price, or the damages, where payment has

been made, is the proportion of the purchase price which the shortage bears to the number of acres which the seller undertook to convey. *Rathke v. Tyler,* 136 Iowa 284; *Horn v. Phillips,* 167 Iowa 169; *Lenoch v. Yoss,* 157 Iowa 314. There was, therefore, no error in ruling out the offered evidence.

The judgment below is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.